224 N.J. Super. 436 (1988)
540 A.2d 918
ADRIENNE CIMA, PETER CIMA, CHRISTOPHER CIMA AND MARYELLEN CIMA, PLAINTIFFS,
v.
GILDA ELLIOTT, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Bergen County (Tenancy).
Decided January 25, 1988.
*437 Martin T. Durkin for plaintiffs (Durkin & Boggia, attorneys).
Ronald Schwartz for defendant.
EICHEN, J.S.C.
This summary dispossess action raises the narrow but novel question whether the statutory term "owner" as used in N.J.S.A. 2A:18-61.1 l(3) of the Anti-Eviction Act (hereinafter "the *438 Act") includes one of several joint tenants. This court concludes that it does.
The pertinent facts are as follows:
On October 15, 1985 plaintiffs acquired title to a two-family house located at 146 Euclid Avenue in Ridgefield Park, New Jersey as joint tenants. Plaintiffs consist of a mother, father and their two adult children, Christopher and Maryellen. The family resides nearby at 121 Euclid Avenue, Ridgefield Park, New Jersey with a maternal grandparent. The purchase price of the property was $85,000. Each of the plaintiffs is jointly and severally liable on a $68,000 note and mortgage given on the property.
Defendant lives in one of the apartments located on the second floor of the two-family house as a month-to-month holdover tenant, her lease having expired on August 31, 1987. The first floor apartment is occupied by a tenant who is also a relative of plaintiffs.
On August 31, 1987 defendant was served with a notice to quit and demand for possession which advised her to vacate the apartment by October 31, 1987 on grounds that "the owner intends to personally occupy the premises," pursuant to N.J.S.A. 2A:18-61.1 l(3). That section of the Act provides in relevant part:
No lessee or tenant ... may be removed by the ... Superior Court from any ... building ... leased for residential purposes ... except upon establishment of one of the following grounds as good cause:
* * * * * * * *

l.(3) The owner of a building of three residential units or less seeks to personally occupy a unit, ...;
On November 1, 1987 Christopher was married. He and his new wife desire to move into defendant's apartment. They are presently living with the family in overcrowded conditions at 121 Euclid Avenue. Plaintiffs all agree and consent to Christopher and his wife occupying the apartment presently occupied by defendant.
*439 Although conceding that the Act permits "[t]he owner" of a building with three residential units or less to remove a tenant when the owner seeks to personally occupy his unit, defendant contends that the term "owner" does not include multiple ownership situations unless all of the owners seek to occupy the unit.
Defendant emphasizes the fact that Christopher did not contribute financially to the acquisition of the building nor does he contribute monetarily to its maintenance, including payment of the mortgage and taxes. Plaintiffs counter with evidence that Christopher assisted in renovating the premises and in performing the repairs to the apartments. This court does not consider defendant's arguments' helpful in resolving this dispute; certainly they are not dispositive of the issue.
Defendant further argues that if this court permits Christopher to remove defendant from her apartment under the foregoing section, the potential for subverting the purpose of the Act would be great and the risk of abuse, manifold. Defendant postulates various situations in which title of property could be taken in multiple ownership for the sole purpose of evading the public policy evidenced by the passage of the Act. In essence, defendant's argument is that if one joint tenant can oust an existing tenant, than each of the remaining joint tenants can do the same, thus creating the potential for wholesale ouster of tenants in multi-family dwellings. Such a result is not possible under the legislative scheme of the Act because, by its expressed terms, said subsection limits the number of units available for personal occupancy to "three residential units or less." Thus, the concerns of the defendant are ill-founded.
In any event this court should not concern itself with anticipated situations. Each case will stand or fall on its own merits.
Considered as a whole, the Act is clearly a legislative act within the police power of the State to act for the common good and welfare. Sabato v. Sabato, 135 N.J. Super. 158, 168 (Law Div. 1975). However, restrictions adopted by the legislature *440 in the exercise of that power must be reasonable and cannot go beyond the public need so as to curtail the personal and property rights secured by constitutional guarantees. Ibid. The Legislature sought to respond to a critical shortage in rental housing, especially within low and moderate income areas. "The purpose of this legislation is to prevent capricious eviction of residential tenants." Gross v. Barriosi, 168 N.J. Super. 149, 151 (Cty.D.Ct. 1979); see also Sabato, supra, 135 N.J. Super. at 164.
This court, in pursuing its duty to interpret legislative action, must "strive to avoid an anomalous, unreasonable, inconceivable or absurd result." Bradley v. Rapp, 132 N.J. Super. 429, 433 (App.Div. 1975). To give the restrictive interpretation to the term "owner" urged by defendant would produce the "anomalous" result of precluding an owner in obvious need of housing, from assuming possession of his own property. As a joint tenant, Christopher has an undivided fee ownership in the entire building, as do each of the other plaintiffs. As such, he, like the individual owner of real estate, has a right to use and occupy any part or all of the building, see Gauger v. Gauger, 73 N.J. 538, 543 (1977).
The Legislature could not have intended such an owner to be precluded from exercising such important property rights. Clearly defendant's eviction is not the "arbitrary or unfair ouster" of a residential tenant which this legislation sought to prevent. See Bradley v. Rapp, supra, 132 N.J. Super. 429. As the court in Bradley stated:
[C]ases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." [at 433].
Accordingly, this court holds that the concept of "owner", as expressed in subsection l(3) of the Act, includes a joint tenant seized with a 25% interest in real estate. In reaching this *441 conclusion, this court perceives no subversion of the statutory goals of the Act.
Judgment of possession is therefore entered in favor of plaintiffs, and a warrant for removal will issue pursuant to N.J.S.A. 2A:18-57 within seven days of the date of this opinion.